UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

AUDIOLOGY DISTRIBUTION, LLC,
as successor in interest to HearUSA, Inc.,

    Plaintiff,

v.                                            Case No. 8:12-cv-2427-T-27AEP

DONNA M. SIMMONS, et al.,

    Defendants.
_____/

**DEFENDANT DANELLE GALLEGOS' SECOND AMENDED MOTION FOR PARTIAL SUMMARY JUDGMENT AND INCORPORATED MEMORANDUM OF LAW**

Defendant, Danelle Gallegos, f/k/a Danelle Boyce, f/k/a Danelle Monaghan, an individual ("Ms. Gallegos"), moves this Court for partial summary judgment (the "Motion") on Counts IV, V, and VI of Plaintiff's Amended Complaint (the "Amended Complaint"), and states:

**Introduction**

Plaintiff's actions against Ms. Gallegos are based upon an Agreement to Protect Business Information and Not to Improperly Compete signed by Ms. Gallegos on July 16, 2007 (the "2007 Agreement"); however, in September 2011, Ms. Gallegos executed a new employment agreement with Plaintiff (the "2011 Agreement").[1] Devoid of any trade-secret protections, 2011 Employment Agreement contains a merger clause that, under Florida law, dictates that the 2011 Employment Agreement is the full and final expression of the parties' contract. Furthermore, the

---

[1] Plaintiff's Complaint and Amended Complaint ignore the 2011 employment agreement signed by Ms. Gallegos, which does not include any provisions that would prohibit Ms. Gallegos from disclosing Plaintiff's alleged trade secrets.

1

2011 Employment Agreement was a novation of the 2007 Agreement. After Ms. Gallegos raised these contentions, Plaintiff filed its Amended Complaint alleging that, in addition to her alleged breach of the 2007 Agreement, Ms. Gallegos breached various employment policies established by Plaintiff. But, ADL's internal policies and procedures are not enforceable contracts, were not intended to create a private cause of action against Ms. Gallegos for monetary damages, and the damages now sought by Plaintiff were not contemplated by the parties. In addition, the 2007 Agreement does not protect Plaintiff's legitimate business interests: Ms. Gallegos is not a licensed audiologist and is unable to compete with Plaintiff. Finally, the Florida Uniform Trade Secret Act precludes Plaintiff's causes of action against Ms. Gallegos for tortious interference and breach of fiduciary duty. Therefore, Ms. Gallegos, as a matter of law, is entitled to partial judgment as to Counts IV, V, and VI.

## Procedural History

On October 18, 2013, Plaintiff, Audiology Distribution, LLC, as successor-in-interest to HearUSA, Inc. ("ADL" or "Plaintiff"), filed its Amended Complaint, which alleges six causes of action: (i) breach of contract against Defendant, Donna Simmons ("Ms. Simmons"); (ii) misappropriation of trade secrets against Ms. Simmons, Ms. Gallegos, Defendant, Paige Ligon ("Ms. Ligon"), and Defendant, Physicians Hearing Specialists ("PHS"); (iii) misappropriation of corporation opportunities against Ms. Simmons and Ms. Gallegos; (iv) breach of fiduciary duty against Ms. Simmons and Ms. Gallegos; (v) tortious interference with advantageous business relationships against Ms. Simmons, Ms. Gallegos, Ms. Ligon, and PHS; and, (vi) breach of contract against Ms. Gallegos. Pl.'s Amended Compl., ECF No. 47. Ms. Gallegos filed her

2

Answer and Affirmative Defenses to the Amended Complaint and raised several affirmative defenses that are the subject of this Motion. Defs.' Answer, ECF No. 55.

**Undisputed Facts**

On June 30, 2006, DHC and HearUSA, Inc. ("HearUSA") entered into an Asset Purchase Agreement, which sold all of DHC's assets to HearUSA. Pl.'s Amended Compl. ¶ 14, ECF No. 47; Defs.' Am. Answer ¶ 7, ECF No. 55. HearUSA hired Ms. Gallegos as a patient care coordinator and office manager. Ex. A at 7:23–24. As part of her employment, HearUSA required Ms. Gallegos to execute an Agreement to Protect Business Information and Not to Improperly Compete (the "2007 Agreement") on July 16, 2007, a copy of which is attached hereto as Exhibit "B." Pl.'s Amended Compl. ¶ 20, ECF No. 47. Paragraph 2 of the 2007 Agreement prohibited Ms. Gallegos from divulging, disclosing, communicating, or using any of HearUSA's confidential information for a period of five (5) years. Ex. B ¶ 2. Furthermore, the 2007 Agreement contained a non-competition clause at Paragraph 4, which prohibited Ms. Gallegos from competing against HearUSA during her employment and for one year following her separation from HearUSA. However, the 2007 Agreement does not expressly state any legitimate business interests that the non-competition clause was intended to protect. *See* Ex. B.

Almost four years after Ms. Gallegos signed the 2007 Agreement, HearUSA filed a voluntary petition for Chapter 11 bankruptcy on May 16, 2011. *See In re HearUSA, Inc.*, Case No. 11-23341-EPK (Bankr. S.D. Fla. 2011); ECF No. 1. On September 9, 2011, ADL purchased substantially all of HearUSA's assets as part of the bankruptcy proceedings initiated by HearUSA. Pl.'s Amended Compl. ¶ 30, ECF No. 47. The same day, ADL sent an employment offer to Ms. Gallegos (the "2011 Agreement"), attached hereto as Exhibit "C." ADL offered Ms.

Gallegos a three and a half percent (3.5%) pay increase to induce her acceptance of continue employment. Ms. Gallegos executed the Confirmation of Acceptance. Ex. C. The Confirmation of Acceptance stated:

> I also understand that by accepting this offer, I am confirming that I have read, understand, accept and agreeing as indicated by my acceptance to be legally bound to the terms and conditions contained in the following documents attached hereto: [t]his offer of Office Manager described by the attached offer letter dated September 9, 2011, and that this Offer Letter *encompasses the entire promises, commitments, representations, statement of facts, and intentions set forth by [ADL] concerning this offer of employment*.

Ex. C (emphasis added).

Neither HearUSA nor ADL took any further precautions to protect the alleged confidential information or alleged trade secrets after ADL's employment offer dated September 9, 2011. *See* Ex. D. By the very terms drafted by ADL, the 2011 Agreement superseded the 2007 Agreement: it contains no restrictive covenants and fails to refer or incorporate any provisions from the 2007 Agreement. *See* Ex. C. Ms. Gallegos was terminated by ADL on October 17, 2011. Pl.'s Amended Compl. ¶¶ 33, ECF No. 47; Defs.' Answer ¶¶ 17, ECF No. 55. In November 2011, Ms. Simmons opened her new audiology center, Physicians Hearing Specialists, and hired Ms. Gallegos to be the patient-care coordinator. *See* Pl.'s Amended Compl. ¶ 36, ECF No. 47; Defs.' Answer ¶ 36, ECF No. 55; Ex. A at 46:24–25.

## Memorandum of Law

Rule 56 of the Federal Rules of Civil Procedure requires a court to "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. "[T]he plain language of

4

Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Summary judgment may be entered "only where there is *no* genuine issue of material fact. Moreover, the moving party has the burden of meeting this exacting standard." *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997) (emphasis in original). Once the movant provides sufficient evidence that there is no genuine dispute as to any material fact, the burden shifts to the non-moving party to illustrate a genuine dispute as to a material fact or provide evidence showing that the non-moving party is entitled to judgment as a matter of law. *Id*. at 1370.

Neither ADL nor Ms. Gallegos dispute the fact that Ms. Gallegos executed the 2007 Agreement or 2011 Agreement. Therefore, there are no genuine issues of material fact for purposes of this Motion. Considering the 2011 Agreement was a final expression of ADL's "entire promises, commitments, representations, statement of facts, and intentions," and Ms. Gallegos accepted same, the 2007 Agreement is null and void as a matter of law. Faced with this argument, ADL's Amended Complaint cobbles together an argument that it has a private cause of action against Ms. Gallegos pursuant to various internal policies and procedures; however, these internal policies are not enforceable contracts, were not intended to create a private cause of action against Ms. Gallegos, nor were such damages contemplated by the parties. Furthermore, even if the Court does not find that the 2011 Agreement was a novation to the 2007 Agreement, the 2007 Agreement is invalid as a matter of law because it does not protect any legitimate business interest on behalf of ADL.

5

**I.      The 2011 Agreement, which Does Not Contain Any Trade Secret Protections, Superseded and Replaced the 2007 Agreement.**

ADL replaced the 2007 Agreement, which bound Ms. Gallegos from disclosing ADL's alleged trade secrets and confidential information, with the 2011 Agreement, which did not include any trade-secret protections. Furthermore, the 2011 Agreement contained a merger clause that, under Florida law, dictates the language of the 2011 Agreement is the full and final expression of the contract between ADL and Ms. Gallegos.

**A.     The 2011 Agreement is a novation of the 2007 Agreement.**

"A novation is a mutual agreement between the parties for the discharge of a valid existing obligation by the substitution of a new valid obligation. Under Florida law, four elements are required to effectuate the novation of a binding contract: (1) a previously valid contract; (2) agreement of the parties to cancel that contract; (3) a new valid and binding contract; (4) agreement of the parties that the new contract will replace and extinguish the old one." *Aronowitz v. Health-Chem Corp.*, 513 F.3d 1229, 1237 (11th Cir. 2008) (applying Florida law). *See Thompson v. Jared Kane Co., Inc.*, 872 So.2d 356, 361 (Fla. 2d DCA 2004). If the language of a written agreement is not in doubt, "the question of whether it effects a novation is one of law for the court." *Aronowitz*, 513 F.3d at 1237. The 2011 Agreement discharged Ms. Gallegos' obligations under the 2007 Agreement. As required by *Aronowitz*, the parties do not dispute that the 2007 Agreement was a valid contract between Ms. Gallegos and HearUSA.

Furthermore, there are no issues of material fact as to the 2011 Agreement, its language, or Ms. Gallegos' execution. The 2011 Agreement, the subject of which is titled "Re: Employment offer" states:

6

> This *offer* is not to be construed as an employment contract. All employees of the Company are employees at will. This means that either the employee or the Company can terminate the employment at any time. *There are no other provisions regarding conditions of employment except as indicated in this letter*.

Ex. C (emphasis added). The 2011 Agreement continues: "[Plaintiff] is pleased to offer you employment as a [*sic*] Office Manager at an hourly pay rate of $18.63." *Id*. "To indicate your understanding and *acceptance* of the above, please sign and return to your HR Representative." *Id*. The second page of the 2011 Agreement is titled "Confirmation of Acceptance" and begins, "I understand that my *offer of employment* is conditioned upon the execution of certain documents. I also understand that by *accepting this offer*, I am confirming that I have read, understand, accept and agree[] as indicated . . . [t]his *offer* of Office Manager . . . encompasses the entire promises, commitments, representations, statement of facts, and intentions set forth by [Plaintiff] concerning this *offer of employment*." *Id*. (emphasis added). The 2011 Agreement concludes: "I indicated that I have received and read the letter of *offer*." *Id*. (emphasis added).

The 2011 Agreement is a valid contract and a novation of the 2007 Agreement. "A contract is made under Florida law when the three elements of contract formation are present: offer, acceptance, and consideration." *Pezold Air Charters v. Phoenix Corp.*, 192 F.R.D. 721, 725 (M.D. Fla. 2000) (citing *Air Prods. & Chems., Inc. v. The Louisiana Land & Exploration Co.*, 806 F.2d 1524, 1529 (11th Cir. 1986). According to the plain and unequivocal language of the 2011 Agreement, Plaintiff offered to employ Ms. Gallegos as an office manager in exchange for an hourly wage of $18.63. Ms. Gallegos accepted the 2011 Agreement in accordance with the very terms of Plaintiff's offer: by signing the second page of the 2011 Agreement. With an offer, acceptance, and consideration present, the 2011 Agreement is a valid and binding contract under

7

Florida law.

Having established that the 2011 Agreement is a contract, under *Aronowitz*, the analysis shifts to whether the parties intended to cancel the 2007 Agreement and replace it with the 2011 Agreement. The 2011 Agreement states that "this Offer Letter *encompasses the entire promises, commitments, representations, statement of facts, and intentions set forth by [ADL] concerning this offer of employment*." Ex. C (emphasis added). Considering there are no further obligations beyond those clearly delineated in the 2011 Agreement, ADL offered the 2011 Agreement to Ms. Gallegos to replace the 2007 Agreement. Furthermore, ADL drafted the 2011 Agreement, which states that "[t]here are no other provisions regarding conditions of employment except as indicated in this letter." Ex. C. In addition, nowhere does the 2011 Agreement make reference to the 2007 Agreement or otherwise reincorporate the terms and obligations of the 2007 Agreement into the 2011 Agreement. Stating that "there are no other provisions regarding conditions of employment except as indicated in this letter," ADL clearly expressed that it wished to terminate the 2007 Agreement and replace it with the 2011 Agreement—to hold otherwise would render the several provisions of the 2011 Agreement a nullity.

### B. The 2011 Agreement's merger clause terminated ADL's rights and responsibilities under the 2007 Agreement.

Furthermore, a merger clause in a new agreement extinguishes the rights and responsibilities of the parties in an earlier agreement. *Waters v. Sundstrom*, 386 So.2d 54, 57 (Fla. 2d DCA 1980). In *Waters*, a trust agreement included a merger clause, similar to that in the 2011 Agreement, which stated, "This Agreement represents the entire agreement among the parties hereto, and all prior written memoranda and all prior oral conversations are merged herein." *Id*. The *Waters* court stated that the merger language in the new trust agreement

8

extinguished an earlier subscription agreement between the parties because it was a final expression of the parties' agreement. *Id.*

Similar to the language in the *Waters* agreement, the 2011 Agreement clearly espouses that it is the final expression of all the promises, commitments, representations, statement of fact, and intentions between ADL and Ms. Gallegos. ADL could have included the terms and conditions of the 2007 Agreement into the 2011 Agreement, but it did not choose to do so. Therefore, ADL cannot now sue for breach of the 2007 Agreement, and this Court should grant Ms. Gallegos summary judgment on Count VI of the Amended Complaint.

## II. ADL's Reliance Upon Its Internal Policies and Procedures Does Not Circumvent the 2011 Agreement's Novation of the 2007 Agreement.

Plaintiff's Amended Complaint alleges that Ms. Gallegos "executed a series of agreements and policies designed to protect confidential patient information." Pl.'s Amended Compl. ¶ 24, ECF No. 47. As part of Count VI, breach of contract against Ms. Gallegos, Plaintiff alleges that Ms. Gallegos "breached the confidentiality and non-compete provisions of . . . [these] agreements and policies . . . by . . . wrongfully taking, retaining and/or utilizing ADL's confidential patient information[.]" *Id.* at ¶ 75. However, ADL's internal policies and procedures are not enforceable contracts, were not intended to provide a private cause of action against Ms. Gallegos, and did not contemplate the monetary damages now sought by ADL.

### A. HearUSA's and Plaintiff's Internal Policies and Procedures Are Not Enforceable Contracts.

Plaintiff's reliance upon HearUSA's and its own internal policies and procedures, attached hereto as Exhibit "E," to create a contractual obligation by Ms. Gallegos to protect Plaintiff's confidential information is misplaced. Generally, employee handbooks and policies

9

are not enforceable contracts unless the policy makes an "express reference to a period of employment and the benefits to accrue therefrom." *Sleit v. Ricoh Corp.*, 2008 WL 4826113, No. 8:07-cv-724-T-23TBM, *4 (M.D. Fla. Nov. 4, 2008). *See Quaker Oats Co. v. Jewell*, 818 So.2d 574, 576–577 (Fla. 5th DCA 2002) ("[i]t is well established Florida law that policy statements contained in employment manuals do not give rise to enforceable contract rights in Florida unless they contain specific language which expresses the parties' explicit mutual agreement that the manual constitutes a separate employment contract"); *Linafelt v. Bev, Inc.*, 662 So.2d 986, 989 (Fla. 1st DCA 1995) ("policy statements are not employment contracts unless there is an express reference in the statement to a period of employment and the benefits to accrue therefrom"); *McConnell v. E. Air Lines, Inc.*, 499 So.2d 68, 69 (Fla. 3d DCA 1986) ("unilateral policy statements cannot, without more, give rise to enforceable contract rights").

HearUSA's and Plaintiff's internal policies and procedures are not contracts. The policies and procedures are "overall plan[s] embracing general goals." *Muller v. Stromberg Carlson Corp.*, 427 So.2d 266, 270 (Fla. 2d DCA 1983) (internal quotations omitted). HearUSA's internal policies and procedures do not include (i) any express language that they are contracts, (ii) a definite period of employment, or (iii) any benefits that accrue from adherence to the internal policies and procedures. Therefore, HearUSA's and Plaintiff's internal policies and procedures do not create any contractual obligations by Ms. Gallegos to protect Plaintiff's alleged trade secrets and confidential information.

**B.     The Damages Sought by Plaintiff in this Action Were Not Contemplated by Ms. Gallegos at the Time She Executed Plaintiff's Internal Policies and Procedures.**

Even if HearUSA's and Plaintiff's internal policies are contracts or could be imbued with the force of one, Plaintiff's claimed damages do not conform to fundamental contract law. Damages for breach of contract are only recoverable to the extent that the damages "naturally flow from the breach and can reasonably be said to have been contemplated by the parties at the time the contract was entered into." *Mnemonics, Inc. v. Max Davis Assoc., Inc.*, 808 So.2d 1278, 1280 (Fla. 5th DCA 2002). "It is well settled that courts of this state will uphold any limitation of remedy or liability provision in a contract as long as the limitation is mutual, unequivocal and reasonable." *Metro. Dade Cnty. v. Worsham Bros. Co., Inc.*, 563 So.2d 1107, 1108 (Fla. 3d DCA 1990). Reading the plain language of the internal policies and procedures, it is clear that the damages Plaintiff seeks were not contemplated by the parties at the time Ms. Gallegos acknowledged her receipt of the internal policies and procedures. The internal policies all include the same remedy for any violation thereof: termination of employment. *See* Ex. E. A violation of any of HearUSA's or Plaintiff's corporate policies regarding confidentiality solely entitled Plaintiff to terminate Ms. Gallegos' employment—not to bring a cause of action for misappropriation of trade secrets in an attempt to solicit monetary damages. Such damage claims were not contemplated by Ms. Gallegos, Plaintiff or HearUSA at the time Ms. Gallegos executed the aforementioned internal corporate policies.

Plaintiff's reliance upon HearUSA's and Plaintiff's internal policies and procedures illustrates Plaintiff's hesitation with its original position. After Defendants filed their affirmative defenses establishing the connection between Ms. Simmons' Employment Agreement and Ms.

11

Simmons' Non-Compete and Confidentiality Agreement—and the natural expiration of those agreements on June 30, 2009—Plaintiff recognized the shaky foundation upon which its claims were built. Subsequently, Plaintiff moved for leave to amend its Complaint to include HearUSA's and its own internal policies and procedures. But, Plaintiff's attempt to bolster its original position is absurd: the internal policies and procedures are not enforceable contracts under Florida law and, furthermore, the monetary damages now sought by Plaintiff were not contemplated by the parties in any of the internal policies and procedures. Therefore, Plaintiff cannot now inflate its contractual—and sole—remedy to terminate Ms. Gallegos' employment into a cause of action for misappropriation of trade secrets.

### C. The Purpose of HearUSA's Internal Policies Was to Protect the Company from HIPAA Violations–Not to Provide a Private Cause of Action Against Ms. Gallegos for Monetary Damages.

ADL's reliance upon its internal policies and procedures ignores the purpose of these agreements. "[A]greements will be construed in furtherance of their purpose; the purpose to be achieved and the spirit of the agreement control rather than the strict meaning of the words used in their commonly accepted meaning." *Rinker Materials Corp. v. Holloway Materials Corp.*, 175 So.2d 564, 567 (Fla. 2d DCA 1965).

> *It is a cardinal rule in the construction of contracts that the intention of the parties thereto will be ascertained from a consideration of the entire agreement*. It is not enough to look to an isolated phrase or paragraph of the contract. All portions of the contract are to be compared and construed with reference to each other. *The intention of the parties with respect to any feature of the contract must be determined from an examination of the whole contract*.

*State of Fla. for Use & Benefit of Westinghouse Elec. Supply Co. v. Wesley Constr. Co.*, 316 F. Supp. 490, 495 (S.D. Fla. 1970) (emphasis added).

All of HearUSA's internal policies and procedures contain the same remedy for any alleged violation, which was termination of employment. *See* Ex. E. Time and again, HearUSA's internal policies recite that any violation could result in termination of employment—not a civil action against Ms. Gallegos for monetary damages. From the clear and unambiguous language of HearUSA's policies, it is evident that the purpose of the policies was solely to give HearUSA grounds for termination of Ms. Gallegos' employment. But, the Amended Complaint attempts to use such policies as the foundation for a breach of contract action against Ms. Gallegos, which was the not the intent or purpose of HearUSA's internal policies and procedures.

### III. ADL Cannot Maintain an Action Against Ms. Gallegos for Breach of the 2007 Agreement Because the 2007 Agreement Does Not Protect Any Legitimate Business Interest of ADL.

Even if this Court does not find that the 2011 Agreement was a novation or merger of the 2007 Agreement, the 2007 Agreement is invalid as a matter of law. "To show misappropriation of a trade secret under Florida law, a claimant must prove: (1) the plaintiff possessed secret information and took reasonable steps to protect its secrecy and (2) the secret it possessed was misappropriated." *Border Collie Rescue, Inc. v. Ryan*, 418 F. Supp. 2d 1330, 1339 (M.D. Fla. 2006) (applying Florida trade-secret law). As a matter of law, a party seeking enforcement of a restrictive covenant must show the "existence of one or more legitimate business interests justifying the restrictive covenant," and "[a]ny restrictive covenant not supported by a legitimate business interest is unlawful and is void and unenforceable." Fla. Stat. § 542.335(1)(b) (2012). *See GPS Ind., LLC v. Lewis*, 691 F. Supp. 2d 1327, 1333 (M.D. Fla. 2010); *N.A. Prod. Corp. v. Moore*, 196 F. Supp. 2d 1217, 1228 (M.D. Fla. 2002).

13

Count VI of the Amended Complaint alleges a breach of contract action against Ms. Gallegos, arguing that Ms. Gallegos "breached the confidentiality and non-compete provisions of the [2007] Agreement by: (1) wrongfully taking, retaining, and/or utilizing ADL's confidential patient information; (2) accepting employment with Simmons' new business, PHS that directly competes with ADL's business within the restricted territory; and (3) soliciting ADL's patients on behalf of PHS." Pl.'s Amended Compl. ¶ 75, ECF No. 47. While ADL alleges that it has a "legitimate business interest in its confidential, proprietary, professional and/or trade secret information, its relationships with its clients and in the goodwill it developed with its patients," ADL glosses over the important point that Ms. Gallegos is not a board certified audiologist and does not have the ability to use this information to compete against ADL. Ex. D at ¶ 9. It is undisputed that Ms. Gallegos was not, and is not now, a board certified audiologist at the time she executed the 2007 Agreement. *See* Ex. D at ¶ 9. Even if Ms. Gallegos had misappropriated ADL's confidential information, she could not use the patient list to compete against ADL; therefore, ADL has no legitimate business interest in the patient list against Ms. Gallegos. *See generally Litwinczuk v. Palm Beach Cardiovascular Clinic, L.C.*, 939 So.2d 268 (Fla. 4th DCA 2006) (holding that medical practice had a legitimate business interest in its patients' goodwill and ongoing business to justify a non-compete agreement against a doctor formerly employed by the medical practice); *Supinski v. Omni Healthcare, P.A.*, 853 So.2d 526 (Fla. 5th DCA 2003) (finding that a medical group had a legitimate business interest in prohibiting a former doctor employed at the medical group from competing against it).

Bolstering this fact is that the 2007 Agreement does not purport to protect any legitimate business interest. *See* Ex. B ¶ 4. Instead, the non-compete clause in the 2007 Agreement merely

sought to protect HearUSA from ordinary, lawful competition, which is not a legitimate business interest. *See PartyLite Gifts, Inc. v. MacMillan*, 895 F. Supp. 2d 1213, 1224 (M.D. Fla. 2012) ("Protection of the employer from ordinary competition, however, is not a legitimate business interest, and a covenant not to compete designed solely for that purpose will not be enforced"). Paragraph 4 of the 2007 Agreement states that Ms. Gallegos shall not:

>   (a) Participate in, accept employment with, own, manage, operate or control any corporation, partnership, association, or other person or entity which competes, or is planning to compete, with Employer in the manufacture, distribution, service or sale of hearing aids and devices to enhance hearing.
>
>   (b) Solicit business from any of Employer's customers, whether on behalf of Employee or on behalf of any other individual or entity.
>
>   (c) Offer employment to, or assist any other individual or entity in offering employment to, any employee, consultant or agent of Employer, or solicit, or assist in soliciting, any employee, consultant or agent of Employer to take any actions which cause a termination of their relationship with HearUSA.

Ex. B. This plain and unambiguous language's sole purpose was to protect HearUSA, now ADL, from lawful competition, such as Physicians Hearing Center and Ms. Simmons. Paragraph 4 does not contain any language establishing a legitimate business interest; therefore, ADL cobbles together an argument attempting to draw a connection between the non-compete provision in Paragraph 4 of the 2007 Agreement and ADL's patient list, client relationships, and overall goodwill. But, considering Ms. Gallegos does not have the ability herself to use the patient list, client relationships, and overall goodwill to compete against ADL, it is evident that the 2007 Agreement is not backed by any legitimate business interest.

Therefore, Ms. Gallegos requests that this Court enter summary judgment on her behalf as to Count VI of the Amended Complaint.

## IV. Section 688.008, Florida Statutes, Bars Counts IV and V of ADL's Amended Complaint.

FUTSA precludes suits for misappropriation of trade secrets based upon "conflicting tort, restitutory, and other law of this state providing civil remedies for misappropriation of a trade secret." § 688.008(1), Fla. Stat. (2012). Section 688.008 does not affect a party's contractual remedies, other civil remedies not based upon misappropriation of a trade secret, or criminal remedies. § 688.008(2), Fla. Stat. (2012). Whether FUTSA preempts conflicting tort causes of action depends on "whether allegations of trade secret misappropriation alone comprise the underlying wrong. If so . . . the cause of action is barred by [the FUTSA]." *Am. Honda Motor Co., Inc. v. Motorcycle Info. Network, Inc.*, 390 F. Supp. 2d 1170, 1180 (M.D. Fla. 2005) (internal quotations omitted). *See Alphamed Pharm. Corp. v. Arriva Pharm., Inc.*, 391 F. Supp. 2d 1148, 1167 (S.D. Fla. 2005); *Allegiance Healthcare Corp. v. Coleman*, 232 F. Supp. 2d 1329, 1335 (S.D. Fla. 2002) (dismissing an unfair competition cause of action because, after examining the complaint, the unfair competition claim was based solely on the misappropriation of trade secrets). ADL must identify a "material distinction between the wrongdoing alleged in the trade[-]secret claim" and the other claims. *Allegiance Healthcare*, 232 F. Supp. 2d at 1336.

Counts IV and V both rely upon the Ms. Simmons' and Ms. Gallegos' alleged misappropriation of ADL's trade secrets as the underlying wrong to maintain its breach of fiduciary duty and tortious interference with advantageous business relationships. *See* Pl.'s Amended Compl. ¶¶ 63–64 & 71, ECF No. 47. Count IV of ADL's Amended Complaint alleges that Ms. Gallegos breached her alleged fiduciary duties to ADL by "misappropriating and

16

wrongfully utilizing ADL's confidential patient information." Pl.'s Amended Compl. ¶ 64, ECF No. 47. Furthermore, Count V of ADL's Amended Complaint alleges that Ms. Gallegos tortiously interfered with ADL's advantageous business relationships by "using improper means and ADL's confidential information." Pl.'s Amended Compl. ¶ 71, ECF No. 47. Because both Count IV and Count V rely upon misappropriation of trade secrets as the underlying harm, the two counts are preempted by the FUTSA.

ADL cannot argue that its claims for breach of fiduciary duty and tortious interference with advantageous business relationships are distinct from the misappropriation of trade secrets. *See Am. Honda Motor Co.*, 390 F. Supp. 2d at 1181 (declining to preempt claims for fraud and negligent misrepresentation because the claims were not entirely dependent on the misappropriation of trade secrets); *Alphamed Pharm. Corp.*, 391 F. Supp. 2d at 1167 (declining to preempt plaintiff's claim for unfair competition because the misappropriation of trade secrets did not form the basis of the unfair competition claim). However, unlike *American Honda Motor Company* and *Alphamed Pharmaceutical Corporation*, ADL's claims for breach of fiduciary duty and tortious interference with advantageous business relationship are dependent *entirely* upon the alleged misappropriation of trade secrets. Without Ms. Simmons' and Ms. Gallegos' alleged misappropriation of ADL's trade secrets, ADL would be unable to state a cause of action for breach of fiduciary duty or tortious interference with advantageous business relationships.

Because there is no genuine issue of material fact, and Ms. Gallegos is entitled to judgment as a matter of law on Counts IV and V, this Court should enter partial summary judgment in favor of Ms. Gallegos on Counts IV and V.

17

WHEREFORE, Ms. Gallegos requests that this Court enter an order granting her partial summary judgment on Counts IV, V, and VI of ADL's Amended Complaint and such other relief as this Court may deem just and proper.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been furnished via the CM/ECF electronic system on November 4, 2013, to all listed on the attached Service List.

>NORTON, HAMMERSLEY, LOPEZ
>& SKOKOS, P.A.
>*Attorneys for Defendants*
>1819 Main Street, Suite 610
>Sarasota, FL  34236
>Phone: (941) 954-4691
>Fax:    (941) 954-2128
>
>  /s/ Philip N. Hammersley
>Philip N. Hammersley
>Florida Bar No:  0280887
>Trial Counsel
>Erik M. Hanson
>Florida Bar No.:  0098529
>PNHProceedings@nhlslaw.com
>EHanson@nhlslaw.com
>NMatyjasik@nhlslaw.com (Legal Assistant)

## SERVICE LIST

Edward B. Carlstedt
Loren J. Beer
Ford & Harrison, LLP
101 E. Kennedy Boulevard, Suite 900
Tampa, FL  33602
Phone (813) 223-7474
Fax (813) 229-6553
ecarlstedt@fordharrison.com
lbeer@fordharrison.com